UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| **LONNIE KEVIN CUTTILL,** ) | |
|                        **Plaintiff,** ) | |
|   **v.** ) | |
| ) | Case No. 08-2199 |
| **JOHN POTTER,** ) | |
| **Postmaster General,** ) | |
|                        **Defendant.** ) | |

# ORDER

In August 2008, Plaintiff Lonnie Cuttill, acting *pro se*, filed a Pro Se Complaint Against Employment Discrimination, Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-5 (#4) against Defendant John Potter, Postmaster General of the United States Postal Service. In June 2009, he filed an Amended Complaint 08-2199 (#37), alleging that he was denied a promotion because of his age and disability, and that he was subsequently demoted in retaliation for complaining about the discrimination. Federal jurisdiction is based on federal question pursuant to 28 U.S.C. § 1331. The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.

In May 2010, Defendant filed a Motion for Summary Judgment (#79). In June 2010, Plaintiff filed a Response to Defendants (*sic*) Motion for Summary Judgment (#94), and Defendant filed a Reply to Cuttill's Response to Defendant's Motion for Summary Judgment (#99). After reviewing the parties' pleadings, memoranda, and evidence, this Court **GRANTS** Defendant's Motion for Summary Judgment **(#79)**.

### I. Background
#### A. Factual Background

The following discussion summarizes the facts from the evidence presented by the parties. Plaintiff was born in August 1956. He began working for the United States Postal Service in February 1986. In 2000, Plaintiff injured himself at work and he is unable to perform all the duties of a letter carrier. (Pl. Dep., #87, p. 20; Def Ex., #81, p. 15.) He was subsequently

classified as a limited duty employee. (Pl. Dep., #87, p. 30; Compl. Ex. 4, #4-1, p. 14.) Plaintiff's initial injury involved his right hand and wrist, and he has had multiple subsequent surgeries for his hand and wrist, as well as his elbow and shoulder. (Pl. Dep., #87, p. 25). Beginning in May 2004, Plaintiff worked as a 204b supervisor at the Decatur Main post office. A 204b position is temporary and may be terminated by management at any time, with or without cause. (Pl. Dep., #80-1, pp. 23-24.)

In February 2007, Plaintiff applied for a promotional opportunity, the Associate Supervisor Program (hereinafter "ASP"). The selection committee included Beverly Adams, Thomas Lister, and Lisa Hartley (hereinafter "the ASP Review Committee" or "the Committee"). At relevant times, neither Hartley nor Adams had met Plaintiff and they did not know his age or that he had any disabilities. (Hartley Decl. , #82, ¶ 22; Adams Decl., #85, ¶ 12.)

The ASP Review Committee evaluated the ASP applicants based on the content of their applications, as well as other criteria. The Committee evaluated the content of the applications in nine separate categories. Six of these categories were scores for essays submitted by applicants, entitled Knowledge Skills and Abilities Statements (hereinafter "KSAs"). If an applicant received a score of zero in any of the nine categories, the Committee automatically eliminated the applicant from consideration. (Hartley Decl., #82, ¶¶ 29-30.) The Committee gave a score of zero to two of Plaintiff's KSAs, the first and sixth essays in the application. (Hartley Decl., #82, ¶ 39.) The Committee ultimately chose other candidates for the two available ASP positions; these candidates are referred to as Applicant No. 5 and Applicant No. 7 in the documents provided to this Court. Applicant No. 5 declined the position, and so the Committee selected Applicant No. 6 as a replacement. (Adams Decl., #85, ¶¶ 44-45.)

In addition to the content of the application, the ASP Review Committee considered three additional factors: whether the applicant had (1) current or live discipline; (2) more than three instances of unscheduled absences from January 1, 2006, to January 1, 2007, not including FMLA-approved leave; or (3) any at-fault accidents from January 1, 2005, to January 1, 2007. (Hartley Decl., #82, ¶¶ 24-27.) Each applicant's current supervisor provided this information to

the Committee. Generally, if an applicant's background showed any one of these three things, the applicant would be eliminated from consideration. (Hartley Decl., #82, ¶ 30.) However, Plaintiff states that Defendant allowed some applicants to proceed even though the applicant had one of the problems listed above. As evidence, Plaintiff claims that one applicant had an at-fault accident on file, but the Committee allowed her to participate. (Am. Compl. #37-2, p. 53.)

Jerry Stroisch, Plaintiff's supervisor and Acting Postmaster at the Main Decatur Post Office, provided information to ASP Coordinator Kathy Barcik, indicating that Plaintiff had more than three instances of unscheduled absences during the relevant period. (Barcik Decl., #83, ¶ 27.) In response to this information, Barcik prepared a letter for ASP Review Committee Chairperson Beverly Adams to send to Plaintiff, informing him that he had been disqualified from consideration for the ASP position on this basis. (Barcik Decl., #83 ,¶ 28.) This letter, dated April 5, 2007, states that Plaintiff was disqualified due to reportable unscheduled leave; the letter did not include any additional reasons for Plaintiff's disqualification. (Def. Ex. 6, #84-1, p. 23.)

Plaintiff contested the report of unscheduled absences. He spoke with several people, including Tom Lister, who was the Decatur Postmaster's supervisor and also a member of the ASP Review Committee. Plaintiff believed that his complaints regarding the incorrect attendance report were disregarded. (Def. Ex. 1, #80-2, p. 1.) As a result, on May 14, 2007, Plaintiff filed a complaint with the Equal Employment Office (hereinafter "EEO") against Defendant, stating that he had been discriminated against in violation of ADA because he was denied the ASP promotional opportunity. (Def. Ex. 1, #80-2, p. 1.)

On May 16, 2007, Plaintiff sent an e-mail to Lister and to other Postal Service management personnel regarding the discrepancies in his attendance record and Lister's failure to respond. He also accused an unknown Postal Service employee of "underhanded, immoral, unethical falsification of time records and harassment." (Def. Ex. 16, #80-2, p. 13.) Plaintiff's e-mail stated that he had filed an EEO complaint about his improper disqualification from the ASP. Plaintiff later indicated in his deposition that he believed that Stroisch had intentionally provided the ASP Review Committee with inaccurate information regarding his attendance record.

3

(Pl. Dep. #80, p. 16; Pl. Dep. #80-1, p. 57.)  Plaintiff stated in his deposition that he formed this belief because in March 2007, Stroisch had told him "there is no place in management for disabled people." (Pl. Dep., #80, p. 17.)  Plaintiff also believed that some unknown person had intentionally altered the content of at least one of his KSAs in his ASP application. (Pl. Dep. #80-1, pp. 5-6.)

Then, ASP Coordinator Barcik examined Plaintiff's Employee Key Indicator Report and learned that he was correct regarding his attendance record. (Barcik Decl., #83, ¶¶ 29-30.).  In a letter dated May 29, 2007, the ASP Review Committee informed Plaintiff that it had reviewed Plaintiff's attendance record, and their review had shown that Stroisch, who had provided information regarding Plaintiff's attendance record to the Committee, had mistakenly thought Plaintiff had more than three unscheduled absences when they were actually scheduled.  Thus, Plaintiff was not disqualified from the ASP due to unscheduled leave.  However, the letter went on to explain that Plaintiff was also disqualified from the ASP due to receiving a score of zero on two KSAs.  Therefore, the ASP Review Committee determined that Plaintiff was still not qualified, even after correcting his attendance records. (Def. Ex. 6, #84-1, p. 26; Adams Decl. #85, ¶ 29.).

Meanwhile, while these events concerning Plaintiff's ASP application were on-going, another series of events took place related to Plaintiff's position as a 204b supervisor.  Plaintiff's direct supervisor and acting station manager Kyle Goodwin testified that, on April 12, 2007, he began performing an observation of the downtown station.  In the process of observing all employees, Goodwin observed that Plaintiff had "on several instances used vulgar language when talking to carriers and the station manager.  He also used inappropriate language when talking to some of the female carriers in the office." (Def. Ex. 8, #86, p. 6.)  Goodwin's observation notes, dated April 10, 2007, state as follows:  "7:29 [a.m.] Supervisor talking with carriers as they came in.  Supervisor used vulgarity with several different carrier [*sic*] throughout the morning." (Def. Ex. 11, #81, p. 12.)  Goodwin later met with Thomas Lister and Jerry Stroisch to discuss his findings.  About two weeks later, Lister asked Goodwin to work as acting station manager at the Decatur Main post office.  As he began that assignment, he had a conversation with Stroisch and

4

Lister about Plaintiff being a representative of management and about his use of vulgarity on the workroom floor. Goodwin asked them to give him a few weeks to work with Plaintiff in an attempt to improve his behavior. (Stroisch Decl., #81, ¶¶ 7-11.)

On his first day as acting station manager, Goodwin explained to Plaintiff his expectations "particularly in regard to him refraining from any vulgar or offensive language on the workroom floor." (Def. Ex. 2, #81, p. 3.) After this discussion, Goodwin observed that Plaintiff continued to use vulgar and inappropriate language on the workroom floor, particularly with some of the female carriers. He had more discussions with Plaintiff and told him that he needed to stop using inappropriate language. (Def. Ex. 2, #81, p. 4.) Plaintiff testified that Goodwin never talked to him about this. (Pl. Dep. #87-1, p. 1-2.)

At this point, Plaintiff sent the May 16, 2007 e-mail discussed above, accusing an unknown Postal Service employee of "underhanded, immoral, unethical falsification of time records and harassment." (Def. Ex. 16, #80-2, p. 13.) After learning about the e-mail, Stroisch and Goodwin discussed the e-mail, as well as Plaintiff's other conduct that Goodwin had previously observed. Goodwin testified that he recommended to Stroisch that Plaintiff be removed as a 204b supervisor immediately "because of the lack of professionalism and accusatory language [in the e-mail]." (Def. Ex. 2, #81, p. 3.) Stroisch concurred with the recommendation based on the "totally inappropriate language" in the e-mail. (Def. Ex. 2, #81, pp. 4-5.) Stroisch testified that the e-mail affected his decision, but not the fact that Plaintiff had stated in the e-mail that he filed an EEO charge. (Def. Ex. 2, #81, p. 19.) Stroisch thought the e-mail was "highly unprofessional and demonstrated very poor judgment from someone who sought to be a member of management" and he decided to "no longer utilize [Plaintiff] as an Acting Supervisor based on his e-mail and based on his vulgar behavior on the workroom floor that he refused to correct, both of which were highly unprofessional and demonstrated poor judgment." (Stroisch Decl. #81, ¶¶ 13-14.)

Stroisch acknowledged that, as acting postmaster, he was responsible for the ultimate decision to remove Cuttill from 204b. (Def. Ex. 2, #81, p. 17.) Goodwin subsequently informed

5

Plaintiff that his 204b status had been terminated and Plaintiff then returned to his previous position with the Postal Service. (Goodwin Decl. #86, p. 12.)

### B. Disputed Facts

The task of determining what proposed facts are disputed has been particularly time-consuming in this case because Plaintiff's responses to Defendant's proposed facts were often not responsive. For example, Defendant's Paragraph 3 states as follows:

> Cuttill stated in his deposition that a 204 b supervisor serves at the discretion of management; the 204 b position is a temporary position that can be terminated by management at any time with or without cause; there are various reasons why 204 b managers are terminated; and a person whose 204 b status is terminated can later be brought back as a 204 b supervisor. [Citations omitted.]

(#79, ¶ 3.) Although Plaintiff did, in fact, state all this in his deposition, Plaintiff disputed this proposed fact because "Defendant improperly states the regulation controlling temporary assignments to nonbargaining positions." (#94, p. 3.) This does not create a genuine dispute as to the proposed fact.

As another example, Defendant's Paragraph 6 states as follows: "Cuttill, in his deposition, stated that management relied upon Cuttill to exercise good judgment as a supervisor, and that management looked for a 204b supervisor who would treat people with respect and with dignity and not accuse people of things. [Citations omitted.]" Again, Plaintiff's deposition testimony is consistent with this statement. Nevertheless, Plaintiff disputed this fact, stating as follows:

> Postal handbook M-39, Management of Delivery Services Section 111 describes Basic Requirements what is expected of its managers. M39 Section 115 describes the Discipline (act of accusing others) expected of managers along with the subsections defining Using People Effectively, Obligation to Employees and Maintaining Mutual Respect Atmosphere. Many managers, plaintiff included, utilized, but not limited to, notebooks/green books/computer notes to retain information of actions taken when accusing employees of anything. [Citations omitted.]

(#94, p. 3.) Thus, Plaintiff's response does not effectively challenge Defendant's proposed fact.

Many of Plaintiff's objections to Defendant's proposed facts are similarly unresponsive, essentially presenting argument instead of evidence that contradicts Defendant's statements. A proposed fact is not in dispute simply because a party lists that fact as "disputed." Furthermore, argument relating to the significance of a proposed fact is not sufficient to raise a genuine dispute as to the fact. As a result, many of Plaintiff's responses do not adequately challenge the proposed fact. The Court has carefully reviewed the evidence, including both parties' references to particular testimony. Where the Court has determined from its review that Plaintiff has raised a genuine issue as to proposed facts, the Court has construed the facts and drawn all inferences in Plaintiff's favor. Otherwise, the Court considers the proposed fact to be undisputed.

## II. Legal Standard

A court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, the Court must decide, based on admissible evidence, whether any material factual dispute exists that requires a trial. *Waldridge v Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). The party seeking summary judgment bears the initial burden of showing that no such issue of material fact exists. *Celotex*, 477 U.S. at 323.

The Court must draw all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the nonmoving party may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather, he must go beyond the pleadings and support his contentions with proper documentary evidence. *Celotex*, 477 U.S. at 322-323. Because the purpose of summary judgment is to isolate and dispose of factually-unsupported claims, the nonmoving party must respond to the motion with evidence setting forth specific facts showing that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001). To successfully oppose a motion for summary judgment, the moving party must do more than raise a "metaphysical doubt" as to the material facts, and instead must present definite,

competent evidence to rebut the motion. *Wolf v. Nw. Ind. Symphony Soc'y*, 250 F.3d 1136, 1141 (7th Cir. 2001); *Albiero*, 246 F.3d at 932.

The Court is cognizant of its special obligation with respect to a *pro se* litigant. The Seventh Circuit has described a court's role as insuring that the claims of a *pro se* litigant are given fair and meaningful consideration. *Madyun v. Thompson*, 657 F.2d 868, 876 (7th Cir. 1981). A *pro se* plaintiff is entitled to a great deal of latitude where procedural requirements are concerned. *Haines v. Kerner*, 404 U.S. 519, 519-20 (1972). In the Central District of Illinois, a *pro se* plaintiff need not comply with the specific technical requirements described in Rule 7.1(D) of the Local Rules when responding to a summary judgment motion. CDIL-LR 7.1(D)(6). Nevertheless, to avoid summary judgment, the plaintiff must provide admissible evidence establishing his claim or setting forth specific facts showing that there is a genuine issue for trial. *Michael v. St. Joseph County*, 259 F.3d 842, 845 (7th Cir. 2001).

### III. Analysis
### A. Overview of Claims

Plaintiff alleges that Defendant discriminated on the basis of age and disability when the ASP Review Committee denied him the opportunity to participate in the ASP. He also alleges that Defendant terminated his 204b status in retaliation against him because he had filed an EEO complaint in May 2007.

Defendant argues that Plaintiff cannot succeed in his age discrimination claim because he acknowledged that age was only one of several reasons for Defendant's conduct. Defendant also contends that Plaintiff failed to establish a prima facie case for age discrimination, disability discrimination, or retaliation. Defendant further argues that even if Plaintiff could establish a prima facie case as to each claim, Defendant had a legitimate, nondiscriminatory reason for denying Plaintiff the opportunity to participate in the ASP and terminating Plaintiff's 204b status.

## B. Age Discrimination Claim

In his complaint, Plaintiff alleges that his employer discriminated against him on the basis of age when he denied Plaintiff a promotional opportunity.

"To establish a claim under the ADEA, a plaintiff-employee must show that 'the protected trait (under ADEA, age) actually motivated the employer's decision'– that is, the employee's protected trait must have 'actually played a role in [the employer's decision-making] process and had a determinative influence on the outcome.'" *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007) (quoting *Schuster v. Lucent Techs., Inc.*, 337 F.3d 569, 573 (7th Cir. 2003) (internal citation and quotation omitted)). In addition, the United States Supreme Court recently held as follows:

> [A plaintiff] must prove, by preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action. The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision.

*Gross v. FBL Fin. Servs., Inc.*, ---U.S.---, 129 S.Ct. 2343, 2352 (2009). Thus, the ADEA does not provide for a mixed-motives age discrimination claim. *Id.* at 2350.

In his motion for summary judgment, Defendant argues that Plaintiff fails to establish that age was the but-for cause of the conduct at issue. In support, Defendant cites Plaintiff's deposition, in which Plaintiff stated: "I think [age] was a factor. I don't think age was – here is the reason: I think disability was the reason with age as the kicker. Kind of like a good hand of poker and you got the ace kicker." (Pl. Dep. #80, p. 12.) In Paragraph 18 of Defendant's proposed facts, Defendant states as follows:

> [Plaintiff] stated in his deposition that although he believed that his age was a factor in his nonselection to participate in the program, he did not believe that age was the reason, and that although it was a determining factor, age was not the determining factor for his nonselection, and that there were other reasons unrelated to his age for his disqualification from the Associate Supervisor Program.

(#79, p. 7.) Plaintiff has not challenged this statement. Thus, Plaintiff has admitted that age was only one factor that influenced the decision to deny him the opportunity to participate in the ASP.

9

Accordingly, the Court grants summary judgment in favor of Defendant on Plaintiff's age discrimination claim.

## C. Disability Discrimination Claim

Plaintiff also alleges that Defendant discriminated against him because he was disabled when the ASP Review Committee denied his application for the ASP.

The Americans with Disabilities Act (hereinafter "the ADA") prohibits employers from discriminating "against a qualified individual with a disability because of [his] disability." 42 U.S.C. § 12112(a). A plaintiff must establish a prima facie case of discrimination with either a direct or indirect method. To establish a prima facie case under the direct method, a plaintiff must establish that (1) he is disabled under the ADA; (2) he was otherwise qualified; and (3) he suffered an adverse employment decision because of this disability. *Scheerer v. Potter*, 443 F.3d 916, 918 (7th Cir. 2006). To establish a prima facie case under the indirect method, a plaintiff must show (1) that he is disabled under the ADA; (2) he was meeting his employer's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) the employer treated similarly-situated employees without a disability more favorably. *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 601 (7th Cir. 2009). If plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id*. The plaintiff must then prove by a preponderance of the evidence that the defendant's reasons are pretextual. *Id*.

*1. Is Plaintiff Disabled Within the Meaning of the ADA?*

Whether establishing a prima facie case by the direct method or the indirect method, Plaintiff has the burden of establishing that he is disabled within the meaning of the ADA. *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 688 (7th Cir. 2010). The ADA defines disability as "a physical or mental impairment that substantially limits one or more of the *major life activities*" of the individual. 42 U.S.C. § 12102(1)(a) (2009) (emphasis added). An individual may also be considered disabled within the meaning of the ADA if there is a record of such an impairment, or if he is regarded by the defendant as having such an impairment. *Id.* A major life activity "means

functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 42 U.S.C. § 12102(2)(A). With respect to working, the inability to perform a single, particular job does not constitute a substantial limitation, but rather an individual must be restricted in the ability to perform a class of jobs or broad range of jobs to be considered "disabled." 29 C.F.R. § 1630.2(j)(3).

Defendant contends that Plaintiff failed to provide competent evidence of disability. In response, Plaintiff has provided a letter from Dr. Fletcher, his treating physician, to the United States Department of Labor Office of Worker's Compensation Programs. (Am. Compl. #37-2, pp. 45-48.) Dr. Fletcher determined that if Plaintiff were required to continually use his upper right extremity, this would result in further complications to Plaintiff's condition. Dr. Fletcher thus recommended "no pushing or pulling of the upper right extremity," "avoid[ing] any job tasks that require . . . repetitive use of the right upper extremity," and "us[ing] a keyboard for data entry infrequently." (Am. Compl. #37-2, p. 47.) In his deposition, Plaintiff testified that his condition limits his ability to grip and to rotate his hand. (Pl. Dep. #87, p. 27.) He testified he can perform activities of daily living, though he has made many adjustments from the way he performed these tasks before his injury occurred. (Pl. Dep. #87, p. 26-30.) In addition, Plaintiff provided a Postal Service form announcing his "permanent reassignment due to disability." (Am. Compl. #37-2, p. 54.) Thus, Plaintiff contends that he was disabled and also notes that the Postal Service perceived him as being disabled.

The relevant inquiry for this Court is whether a jury could reasonably conclude that Plaintiff's restrictions on the use of his right arm constitute a disability within the meaning of the ADA, or whether the Postal Service regarded Plaintiff as having such a disability. First, Plaintiff has not provided evidence that he is substantially limited in his major life activities. While the letter from Dr. Fletcher and Plaintiff's testimony indicate Plaintiff has suffered a permanent injury, Plaintiff's evidence demonstrates that he is fully capable of caring for himself, working, and performing activities of daily living. Based on the letter from Dr. Fletcher and Plaintiff's testimony at deposition, this Court finds that a jury could not reasonably conclude that Plaintiff is substantially limited in his major life activities. Second, Plaintiff has not provided evidence that

11

the Postal Service considered him to be substantially limited in his major life activities. While it is undisputed that Plaintiff could no longer work as a carrier after his injury, the Postal Service promoted him to the 204b management position several years after his injury occurred. Furthermore, two of the three members of the ASP Review Committee were not aware that Plaintiff had a disability when they denied his application for the ASP.

Thus, the Court concludes a jury could not reasonably find that Plaintiff is disabled within the meaning of the ADA. Therefore, Plaintiff has not established a prima facie case for his disability claim. Nevertheless, the Court will consider the parties' remaining arguments concerning Plaintiff's prima facie case.

2.   *Remaining Elements of Plaintiff's Prima Facie Case Using Direct Method*

In addition to demonstrating he is disabled under the ADA, Plaintiff must show that he was otherwise qualified for the ASP and that the ASP Review Committee did not select him to participate in the program because of his disability.

First, Defendant argues that Plaintiff was not qualified for the ASP.[1] It is undisputed that receiving a zero on any of the KSAs was grounds for automatic disqualification. (Hartley Decl., ¶ 32.) Defendant has provided evidence that Plaintiff received zeros on the first and sixth KSAs. (Hartley Decl., ¶ 39.) Defendant has also provided evidence that applicants #8 and #9 each received at least one zero on the KSAs. Those applicants were disqualified from further participation in the selection process for the ASP. (Hartley Decl., ¶¶ 45-46.) The Committee ultimately chose applicants six and seven to participate in the ASP; neither of those applicants received a zero on any of the application criteria. (Hartley Decl., ¶¶ 56, 43-44.) Based on these undisputed facts, the Court finds that a jury could not reasonably find that Plaintiff was otherwise qualified for the ASP.

---

[1] The ADA defines a "qualified individual" as one with a disability "who satisfies the requisite skill, experience, education, and other job-related requirements of the employment position", who can perform the essential functions of the position with or without accommodation. 29 CFR § 1630.2(m).

12

Second, Defendant argues that there was no causal connection between Plaintiff's disability and the decision of the ASP Review Committee. Defendant argues that Plaintiff provided no evidence that his employer was motivated by disability. Plaintiff responds that he has direct evidence of discrimination because Stroisch commented: "[T]here isn't any room for disabled people in management." (Pl. Dep. #80-1, p. 6.) For purposes of this motion, the Court accepts as true Plaintiff's testimony that Stroisch made this statement.

Stroisch was not a member of the ASP Review Committee, and was in no way involved in the decision to deny Plaintiff's ASP application. It is true, as Plaintiff points out, that Stroisch gave the Committee incorrect information about Plaintiff's attendance record that led to the Committee's initial decision to deny Plaintiff's application. However, the Committee corrected its error, and then informed Plaintiff that he did not qualify for the ASP program because of his scores on the essay questions. Plaintiff has not presented any evidence that Stroisch influenced the Committee's final decision to disqualify Plaintiff on the basis of his performance on the essay questions. Therefore, Stroisch's statement does not provide direct evidence that Defendant denied Plaintiff a promotional opportunity on the basis of disability. .*McCarthy v. Kemper Life Ins. Cos.,* 924 F.2d 683, 686 (7th Cir. 1991) (noting that evidence of statements by non-decision makers does not satisfy Plaintiff's burden of establishing a prima facie discrimination claim). Furthermore, Plaintiff testified that Stroisch's comment was not made in reference to Plaintiff's ASP application, but rather the comment was prompted by Plaintiff's sick leave for pneumonia. (Pl. Dep. #80, p. 17.) Comments that are too remote in time and context to causally connect a plaintiff's disability to an adverse employment action do not establish this element of the prima facie case. *Uhl v. Zalk Josephs Fabricators, Inc.*, 121 F.3d 1133, 1136 (7th Cir. 1997); *see also Geier v. Medtronic, Inc.*, 99 F.3d 238, 242 (7th Cir.1996) (stating that "isolated comments must be contemporaneous with the discharge or causally related to the discharge decision making process"). Thus, the Court finds that a jury could not reasonably find that the ASP Review Committee did not select Plaintiff to participate in the program because of his disability.

In summary, the Court concludes that Plaintiff has not established any of the elements of a prima facie discrimination claim under the direct method of establishing such a claim.

13

*3.     Remaining Element of Plaintiff's Prima Facie Case Using Indirect Method*

The discussion above has addressed the first three elements of a prima facie discrimination claim using the indirect method. The only remaining element to consider is whether Plaintiff has shown that the employer treated similarly-situated employees without a disability more favorably.

"Whether two employees are 'similarly situated' is a common sense inquiry that depends on the employment context." *Filar v. Bd. of Ed. of Chi.*, 526 F.3d 1054, 1061 (7th Cir. 2008). "The purpose of the prima facie case is to ensure that there is enough evidence to raise the specter of discrimination, justifying judgment for the plaintiff if the employer does not provide a legitimate business reason for its action." *Id.* The employee used for comparison must be similar enough "to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel, [so as to] isolate the critical independent variable: complaints about discrimination." *Id.* at 1061 (citing *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007), *aff'd*, 553 U.S. 442 (2008)).

Plaintiff contends that he is similarly situated to a number of employees including ASP Applicants Nos. 3, 5, 6, and 7, a male Postal Service employee, two Postal Service managers, and another Postal service employee. (Pl. Answer to Interrog. #90, pp. 10-12.)

With respect to the ASP applicants, the evidence shows that none of the other applicants received a zero on any of the criteria; thus, they were not similarly situated to Plaintiff. (Hartley Decl., ¶¶ 38, 42-44.) Plaintiff contends that other ASP applicants were given an opportunity to revise KSAs or to correct other deficiencies in their applications, and he was not given a similar opportunity. (#94, pp. 9-14; Pl.'s Dep. #87, pp. 12-13.) Plaintiff provides no evidence in support of this theory.

With respect to other employees name by Plaintiff, Plaintiff contends these employees were treated differently with regard to discipline and behavior. (Pl. Answer to Interrog. #90, pp. 10-12.) However, they were not applicants for the ASP. Therefore, they are not similarly situated for purposes of Plaintiff's disability claim.

The Court concludes that Plaintiff has failed to provide evidence that would reasonably permit a jury to conclude that his employer treated similarly-situated employees more favorably than it treated Plaintiff.

*4.     Pretext*

If plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. The plaintiff must then prove by a preponderance of the evidence that the defendant's reasons are pretextual. *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 601 (7th Cir. 2009).

Plaintiff argues that the ASP Review Committee's given reason for disqualifying him from the program is a mere pretext. Specifically, he contends that the application the Committee actually reviewed was not the same as the application he submitted. This argument is based on the premise that the Committee was part of a conspiracy in which unknown employees altered his application.

Because this Court has concluded that Plaintiff did not establish a prima facie case, the Court will not evaluate Plaintiff's arguments regarding pretext.

### D.  Retaliation Claim

Plaintiff alleges that Defendant retaliated against him when it removed him from his position as a 204b temporary supervisor after Plaintiff filed an EEO complaint.

The fact that Plaintiff's discrimination claims have failed is not fatal to his retaliation claim. The ADA prohibits an employer from retaliating against an employee who has raised an

ADA claim, whether or not that employee ultimately succeeds on the merits of that claim. *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 690 (7th Cir. 2010) (citing *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 785 (7th Cir. 2007)).

A claim for unlawful retaliation may be established by the direct or indirect method. *Amrhein v. Health Care Serv. Corp.*, 546 F.3d 854, 858 (7th Cir. 2008). Under the direct method, a plaintiff must demonstrate that (1) he engaged in a protected activity; (2) he suffered a materially adverse employment action; and (3) a causal connection exists between the two. *Id*. Under the indirect method, the first two elements remain the same, but instead of a causal link, a plaintiff must prove that (3) he was performing his job satisfactorily and (4) he was treated less favorably than a similarly situated employee who did not complain of discrimination. *Id.* at 859. Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to show a nondiscriminatory reason for his action. The plaintiff may then demonstrate that this reason is pretextual. *Id.*

*1.    Plaintiff's Prima Facie Case*

It is undisputed that Plaintiff engaged in a protected activity by filing an EEO complaint on May 14, 2007. It is also undisputed that, subsequent to filing the EEO complaint, he suffered a materially adverse employment action by being demoted from his 204b management position. The Court now addresses the parties' argument regarding the remaining elements of the prima facie case and arguments related to pretext.

Plaintiff argues there is a causal connection between his filing of the EEO complaint alleging disability discrimination and his demotion from his 204b management position. As evidence, Plaintiff notes that his demotion took place on the same day that Plaintiff sent an e-mail in which Plaintiff complained of his treatment with respect to the ASP application and noted he had filed an EEO complaint. The e-mail, which Plaintiff sent to several levels of management, stated: "I had no choice other than to file an EEO claim . . . . This underhanded, immoral, unethical falsification of time records and harassment will not be tolerated; . . . ." (Def. Ex. 16, #80-2, p. 13.)

Defendant responds that Plaintiff's evidence would not permit a jury to reasonable find that there was a causal connection between Plaintiff's EEO complaint and his demotion. Defendant refers to the testimony of Stroisch, Goodwin, and others, which suggests that Plaintiff was demoted due to the unprofessional and accusing language in the e-mail, as well as a recent problems with use of vulgar language in the workplace.

The Seventh Circuit has determined that generally, evidence of temporal proximity, standing on its own, is insufficient to establish a causal connection for a claim of retaliation under the direct method of proof. *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 549 (7th Cir. 2008). However, there is an exception where the adverse employment action takes place "on the heels of protected activity." *Id,* (citing *McClendon v. Ind. Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997). In cases where the time period between the filing of a complaint and the adverse action was less than several days, the Seventh Circuit has found that plaintiff has shown circumstantial evidence of a causal nexus sufficient to carry his burden of establishing a prima facie case. *McClendon*, 108 F.3d at 797.)

Here, where Plaintiff was demoted within hours of having sent an e-mail to his supervisors informing them that he had filed an EEO complaint, the Court agrees with Plaintiff that he has established a prima facie case of retaliation. Because the Court has found that Plaintiff has established a prima facie case for retaliation under the direct method, the Court will not consider parties' arguments regarding whether Plaintiff established a prima facie case under the indirect method.

2.  *Defendant's Non-Retaliatory Reason for Action*

Because Plaintiff has established a prima facie discrimination claim, the burden shifts to Defendant to show that it had a legitimate, non-retaliatory reason for removing Plaintiff from his position as a 204b supervisor. *Amrhein*, 546 F.3d at 859. In determining whether Defendant has shown a legitimate reason for the employment action, the relevant issue is not whether an employer's evaluation of the employee was correct, but whether it was honestly believed.

17

*Culver v. Gorman & Co*, 416 F.3d 540, 547 (7th Cir. 2005). Summary judgement is appropriate only if a reasonable trier of fact would be compelled to believe Defendant's explanation, and Plaintiff can avoid summary judgment by pointing to specific facts that place the employer's explanation in doubt. *Id*.

It is undisputed that Plaintiff sent several managers an e-mail on May 16, 2007, stating that he had filed an EEO Complaint and also accusing unknown Postal Service employees of "underhanded, immoral, unethical falsification of time records and harassment." (Def. Ex. 16, #80-2, p. 13.) Defendant contends that Plaintiff was not removed from his 204b position due to filing the EEO Complaint, but rather that Plaintiff was removed due to the threatening, accusatory language in the e-mail. Defendant states:

> Management legitimately believed that the language in Cuttill's May 16, 2007 e-mail to the Postmaster's supervisor and second level supervisor and to the Postmaster was wholly inappropriate language to be used by someone in a temporary 204b management position whose position could be terminated at any time at the discretion of the management with or without cause, and the Postal Service decided to terminate his 204b status immediately based upon this language and his vulgarity on the workroom floor.

(#79, p. 46).

First, regarding the e-mail, Goodwin testified that he recommended to Stroisch that Plaintiff be removed as a 204b supervisor immediately "because of the lack of professionalism and accusatory language [in the e-mail.]" (Def. Ex. 2, #81, p. 3.) Stroisch also felt that the e-mail was "highly unprofessional and demonstrated very poor judgment from someone who sought to be a member of management." (Strosich Decl. #81, ¶¶ 13-14.) Second, regarding Plaintiff's vulgarity, Goodwin's observation notes that pre-date Plaintiff's e-mail indicate management had an existing concern about Plaintiff's language with co-workers. (Def. Ex. 2, #81, 12; Stroisch Decl., #81, ¶¶ 7-11.)

At this stage, the Court is persuaded that a reasonable trier of fact would be compelled to believe Defendant's explanation. Defendant's e-mail, which bordered on accusing unknown

18

Postal Service employees of a conspiracy to ensure his ASP application would not succeed, would compel a reasonable trier of fact to conclude that Defendant found the tone and language of the e-mail to be inappropriate.

*3.    Plaintiff Must Show Defendant's Reason is a Pretext*

Given Defendant's showing of a legitimate, non-retaliatory reason for removing Plaintiff from 204b management, the burden shifts back to Plaintiff to argue that Defendant's given reason is a mere pretext, and that Defendant actually had a retaliatory motive. *Amrhein*, 546 F.3d at 859.

In order to demonstrate a material issue of fact as to pretext, a plaintiff must show that either (1) it is more likely that a discriminatory reason motivated the employer than the proffered non-discriminatory reason or (2) than an employer's explanation is not credible. *Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004). Pretext is more than a mistake on the part of the employer; it is a phony excuse. *Id.* Where a defendant has proffered more than one reason for the challenged action, a plaintiff must address all of the employer's suggested reasons. *Id.*

Plaintiff has presented some evidence to show that Defendant's given reasons for removing him from 204b status were a mere pretext for discrimination. First, Plaintiff has submitted letters of recommendation and statements from several supervisors and co-workers indicating that Plaintiff behaved appropriately in the workplace, and that the Postal Service tolerated a certain amount of "shop talk", thus Plaintiff's vulgarity was tolerated in this workplace. Second, he alleges that Stroisch told him in "there is no place in management for disabled people." (Pl. Dep., #80, p. 17.)

First, Plaintiff offers letters from supervisors and co-workers stating that Plaintiff did not act unprofessionally or inappropriately in their presence, and that other employees and supervisors exhibited inappropriate behavior and used "shop talk." (Am. Compl. #37-2, pp. 23-27, 34.) However, while Plaintiff's evidence shows that some of Plaintiff's former supervisors and co-workers would disagree with Stroisch's assessment of Plaintiff, none of this evidence undermines Stroisch's credibility. It is Plaintiff's burden to demonstrate that Defendant's given

19

reasons for his demotion are lies, not merely incorrect assessments of Plaintiff's character. *Hudson*, 375 F.3d at 562. Plaintiff does not provide any evidence that Defendant did not believe that Plaintiff's behavior was unprofessional. Plaintiff did not dispute Defendant's proposed fact that "Acting Postmaster, Jerry Stroisch, believed that Cuttill's e-mail was highly unprofessional and demonstrated very poor judgment from someone who sought to be a member of management." (#79, p. 6.)

Second, the Court has already discussed Stroisch's stray comment that "there is no place in management for disabled people" (Pl. Dep. #80, p. 17.) To serve as evidence of discrimination, isolated comments must be contemporaneous with discharge or causally related to the discharge decision making process. *Geier v. Medtronic, Inc.* 99 F.3d 238, 242 (7th Cir. 1996.) Stroisch's comment was an isolated comment made approximately two months before Plaintiff was removed from the 204b position, and it was made in the context of Plaintiff's sick leave. Accordingly, this Court finds a jury could not reasonably conclude, on the basis of Stroisch's statement, that it is more likely that a discriminatory reason motivated Defendant than the proffered non-discriminatory reason or that Defendant's explanation is not credible.

The Court concludes that Plaintiff has not provided evidence that gives rise to a genuine issue of material fact regarding whether Defendant's proffered reasons were mere pretext.

## IV. Summary

For the reasons stated above, the Court **GRANTS** Defendant's Motion for Summary Judgment **(#79)**. This case is terminated.

ENTER this 6th day of October, 2010.

                                                 s/ DAVID G. BERNTHAL
                                                 U.S. MAGISTRATE JUDGE